**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBIN TREHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 8023 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| KIKKERLAND DESIGN, INC., a New York Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The Court denies Defendant's motion to dismiss Counts I and II of the Complaint [11]. Defendant's Answer is due on or before 4/4/14. Status hearing set for 4/8/14 is stricken and reset to 4/24/14 at 8:30 a.m.

## STATEMENT

On November 7, 2013, Plaintiff Robin Trehan ("Trehan") filed a two-count Complaint against Defendant Kikkerland Design, Inc. ("Kikkerland") alleging a common law breach of contract claim in Count I and a trademark infringement claim pursuant to the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* in Count II. Before the Court is Kikkerland's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Kikkerland's motion to dismiss.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 554, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F. 3d 662, 665-66 (7th Cir. 2013); *see also Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per

curiam) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

## BACKGROUND

In his Complaint, Trehan alleges that he is the holder of three registered United States trademarks for the IPURSE mark (Serial numbers 76553510, 76553507, and 85799125), the owner of the Internet domain name, ipurse.com, and a distributor and seller of various specialty products under the IPURSE trademark, including purses, pouches, credit cards, and wallets. (R. 1, Compl. ¶ 4.) Kikkerland is a designer, manufacturer, and seller of smartphone accessories, including cases for iPhones. (*Id.* ¶ 3.)

According to Trehan, around December 2012, he discovered that Kikkerland was selling various items under the IPURSE mark on Kikkerland's own website, on other websites, and at Bed, Bath & Beyond stores. (*Id.* ¶ 7.) Around February 5, 2013, Trehan and Kikkerland entered into a settlement agreement under which Kikkerland agreed to pay Trehan a sum of money, remove all smartphone cases labeled with IPURSE from Kikkerland's website by March 1, 2013, and advise other retailers to remove cases they had purchased from Kikkerland that contained the IPURSE mark by March 1, 2013. (*Id.* ¶ 8.) The settlement further provided that if Kikkerland certified in writing by April 1, 2013 that all Bed, Bath & Beyond stores had no more than 1,000 of its "iPurse" items, Bed, Bath & Beyond could continue to sell its remaining inventory until July 1, 2013. (*Id.* ¶ 9.) In addition, the settlement agreement provided that if Kikkerland certified in writing by April 1, 2013 that all retailers besides Bed, Bath & Beyond stores had no more than 500 of Kikkerland's "iPurse" items, then those retailers could continue to sell their remaining inventory until July 1, 2013. (*Id.* ¶ 10.)

Around April 1, 2013, Kikkerland certified in writing that Bed, Bath & Beyond stores did not exceed 1,000 of its "iPurse" items. (*Id.* ¶ 12.) Kikkerland, however, did not provide any certification regarding the amount of "iPurse" items at other retailers. (*Id.* ¶ 13.) In August and September of 2013, Trehan alleges that Kikkerland continued to sell items with "iPurse" marks on various websites, including eBay, Sears.com, Amazon, All Modern, Shopzilla, and Wayfair, among others. (*Id.* ¶ 14.) On August 13, 2013, Trehan's attorney sent a letter to Kikkerland's attorney demanding that Kikkerland immediately cease using any "iPurse" marks. (*Id.* ¶ 15.) Trehan further asserts that as of November 7, 2013, Kikkerland continues to sell "iPurse" labeled items on Rakuten.com, TheFrenchdoorBx.com, Djshoppingconnection.com, oo35mm.com, itSugar.com, pleasant-surprise.com, flapples.com, pocomaru.com, wishpot.com, the-furniture-store.com, whatonearthcatalog.com, and giizmos.com, among other sites. (*Id.* ¶ 18.)

In addition, Trehan contends that Kikkerland is paying for advertisements on Google and other websites to steer potential customers away from his iPurse.com website. (*Id.* ¶ 20.) Trehan further alleges that searching for the term "iPurse" on Google on October 23, 2013, returned a "Shop for ipurse on Google" header at the top of the search results where four out of the five items displayed were Kikkerland's smartphone cases. (*Id.* ¶ 21.) Moreover, Trehan asserts that Kikkerland's unauthorized use of the IPURSE mark is likely to cause confusion among customers about the source of the IPURSE items, is intended to dilute the value and

distinctiveness of Trehan's IPURSE mark, and constitutes unfair competition with Trehan and his website ipurse.com.  (*Id.* ¶ 23.)

## ANALYSIS

**I.     Breach of Contract Claim (Count I)**

In its motion to dismiss, Kikkerland maintains that Trehan has failed to sufficiently allege his breach of contract claim under the federal pleadings standards.  Here, the parties do not dispute that Illinois law governs the written settlement agreement at issue in this lawsuit.  *See Auto–Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal citation and quotation marks omitted); *see also Abbott Labs. v. Alpha Therapeutic Corp.,* 164 F.3d 385, 387 (7th Cir. 1999) ("Local contract law governs the construction and enforcement of settlement agreements.").  Settlement agreements are enforced like any other contract.  *See In re Illinois Bell Tele. Link–Up II,* 994 N.E.2d 553, 558, 373 Ill.Dec. 784 (1st Dist. 2013) (settlement "agreements are construed and enforced under principles of contract law").  To establish a breach of contract claim under Illinois law, a plaintiff must show:  "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff."  *Hess v. Kanoski & Assoc.,* 668 F.3d 446, 452 (7th Cir. 2012) (citation omitted); *see also Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 754, 371 Ill.Dec. 550, 566 (1st Dist. 2013).

Here, Kikkerland argues that Trehan's allegations are unclear because it does not understand whether its alleged breach of the settlement agreement is predicated on its failure to remove all smartphone cases with "iPurse" marks from its own website or its failure to advise other retailers who purchased iPurse-labeled cases from Kikkerland to remove the cases from their websites.  Construing the well-pleaded allegations as true, Trehan alleges that Kikkerland breached the written settlement agreement by selling the infringing iPurse-labeled items on various websites.  Trehan does not allege that Kikkerland is continuing to sell the infringing products on Kikkerland's own website and the allegations whether Kikkerland properly advised the other retailers gives background to Trehan's claim that Kikkerland breached the contract by selling infringing products on other websites.

Trehan's breach of contract claim is very straight-forward and it is well-established that the amount of factual allegations required to state a plausible claim for relief under *Twombly* and *Iqbal* depends on the complexity of the case.  *See Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014); *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008).  In his Complaint, Trehan provides "enough details about the subject-matter of the case to present a story that holds together" regarding the terms of the written settlement agreement and how Kikkerland breached the agreement.  *See Engel v. Buchan,* 710 F.3d 698, 709 (7th Cir. 2013) (citation omitted).  In other words, Trehan has alleged enough factual content allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

In its reply brief, Kikkerland attempts to refute Trehan's allegations by arguing that it abided by the express terms of the settlement agreement. As the Seventh Circuit explained approximately 27 years ago, "the defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir. 1987). This requirement holds true after the Supreme Court's decisions in *Iqbal* and *Twombly. See Iqbal,* 556 U.S. at 678 ("for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true"); *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court therefore denies Kikkerland's motion to dismiss Trehan's breach of contract claim as alleged in Count I of the Complaint.

## II.     Trademark Infringement Claim (Count II)

In Count II of the Complaint, Trehan alleges a trademark infringement claim. To state a claim for trademark infringement under the Lanham Act, Trehan must plead that (1) its mark is protectable, and (2) Kikkerland's use of the mark is likely to cause confusion among customers. *See Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008); *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 897 (7th Cir. 2001); *Morningware, Inc. v. Hearthware Home Prods., Inc.,* 673 F.Supp.2d 630, 634 (N.D. Ill. 2009).

In its motion, Kikkerland argues that Trehan has not sufficiently alleged that its mark is protectable because Trehan does not identify any of the three U.S. trademark registrations that he owns. Nevertheless, Trehan alleges that he is the holder of three registered U.S. trademarks for the IPURSE name and identifies the serial numbers of the three trademarks as 76553510, 76553507, and 85799125.[1] A quick trademark search reveals addition information regarding the marks at issue. *See* http://www.uspto.gov/ Taking Trehan's allegations as true, he has provided sufficient detail to give Kikkerland fair notice of the identity of the marks at issue and that the marks are protectable. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 196, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) ("registration provides prima facie evidence of the registrant's exclusive right to use the mark in commerce.").

Moreover, Kikkerland contends that Trehan failed to allege that Kikkerland has used any of the trademarks in commerce. Specifically, Kikkerland argues that Trehan failed to identify Kikkerland's specific acts or the accused products that infringe Trehan's trademarks. Despite

---

[1] The Court will not consider Anthony T. Cascio's declaration and documents attached to Kikkerland's opening memorandum in support of its motion to dismiss because doing so would convert the present motion to dismiss into a motion for summary judgment. *See* Fed.R.Civ.P. 12(d); *Rutherford v. Judge & Dolph, Ltd.,* 707 F.3d 710, 713-14 (7th Cir. 2013). The Court, however, considered the parties' settlement agreement attached to Kikkerland's reply brief because Trehan refers to this document in his Complaint, and thus the Court can incorporate it by reference. *See Rutherford,* 707 F.3d at 713; *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012).

Kikklerand's argument to the contrary, in his Complaint, Trehan specifically identifies 20 websites that were selling Kikkerland's items under the "iPurse" name. Trehan further alleges that Kikkerland used the "iPurse" name on products that it was selling through Bed, Bath, & Beyond retail stores. Taking these allegations as true, Trehan has pled sufficient facts showing that Kikkerland used the mark IPURSE in commerce under the federal pleading standards. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Next, Kikkerland argues that Trehan failed to sufficiently allege that Kikkerland's use of the trademark is likely to cause confusion among customers. When assessing the likelihood of consumer confusion, courts consider "(1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintiff's." *AutoZone, Inc. v. Strick,* 543 F.3d 923, 929 (7th Cir. 2008); *see also Morningware,* 673 F.Supp.2d at 636. Courts have recognized that "the 'likelihood of confusion' is a fact-specific inquiry best left for decision after discovery." *Vulcan Golf, LLC,* 552 F.Supp.2d at 769 (N.D. Ill. 2008); *see also AutoZone,* 543 F.3d at 929 ("Whether consumers are likely to be confused about the origin of a defendant's products or services is ultimately a question of fact.").

Viewing the well-pleaded facts in the Complaint as true, Trehan has sufficiently alleged that Kikkerland's use of the mark is likely to cause confusion among customers. Specifically, the two iPurse/IPURSE marks are almost identical, both marks are spelled the same way, and the marks are used for iPhone cases. Moreover, like in *Morningware,* Trehan alleges that Kikkerland is using the IPURSE mark as a keyword for paid advertising on Google and other websites to attract customers to Kikkerland's "iPurse" products. *See id*. at 637. Nonetheless, Kikkerland relies on a Ninth Circuit case to argue that the use of a trademark holder's marks as keywords in search engine advertising programs is not sufficient evidence by itself to support a finding of a likelihood of confusion. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137 (9th Cir. 2011). This case, however, is not binding on the Court and is unconvincing for an initial assessment of adequate pleading. In addition, Trehan pleads other facts to show a likelihood of customer confusion. Trehan states, for example, that a Google search for the term "iPurse" on October 23, 2013 returned a "Shop for iPurse on Google" result where four out of five items contained photographs of Defendant's "iPurse" products. These allegations further support Trehan's argument that Kikkerland's "iPurse" products may be a source of customer confusion. The Court therefore denies Kikkerland's motion to dismiss Count II of the Complaint.

**Dated:** March 17, 2014

**AMY J. ST. EVE**
**United States District Court Judge**